**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JAMES D. CROCHET**                                          **CIVIL ACTION**

**VERSUS**                                                    **No. 04-1982**

**TERREBONNE WIRELINE SERVICES, INC.**            **SECTION: I/1**


### *ORDER AND REASONS*

Before the Court is a motion for summary judgment filed on behalf of defendant, Stockstill Boat Rentals, Inc. ("Stockstill").[1]  For the following reasons, defendant's motion is **DENIED.**

### *BACKGROUND*

On February 6, 2004, plaintiff, James D. Crochet ("Crochet"), was employed by Terrebone Wireline Services as a deckhand aboard a liftboat in the Gulf of Mexico.[2]  In September, 2003, Crochet was involved in an accident in which he fell approximately seven feet

---

[1]Rec. Doc. No. 81.

[2]*Id.* at p. 3.

and injured his elbow and knee.[3]  He underwent two arthroscopic surgeries to his knee and

returned to work on December 16, 2003.[4]

    On February 6, 2004, Crochet was returning home from an eighteen-day shift in the

South Marsh Island Field in the Gulf of Mexico.[5]  In order to get from the liftboat to shore,

Crochet and his supervisor, Chad Richoux ("Richoux"), were transported to two different

Chevron platforms and then finally to shore.[6]  On the first leg of the trip, an unidentified

crewboat took Crochet and Richoux from the liftboat to a platform identified by Richoux as the

Chevron SMI 236 platform.[7]  It is undisputed that Crochet was able to board the unidentified

crewboat without incident under prevailing sea conditions.[8]  Plaintiff and Richoux then waited

for several hours on the Chevron SMI 236 platform until the M/V DOUG II, owned by defendant

Stockstill, arrived to transport them to the main Chevron platform in the field.[9]  The two men

were told by the platform personnel that the personnel basket could not be used to transfer them

to the M/V DOUG II because there was not enough fuel to operate the crane.[10]  Crochet and

Richoux prepared to board the M/V DOUG II from a sea-level deck.[11]  Crochet and Richoux had

---

[3]Rec. Doc. No. 93, p. 18.

[4]Rec. Doc. No. 93, p. 18.

[5]Rec. Doc. No. 81, p. 3.

[6]Rec. Doc. No. 82, p. 3.

[7]Rec. Doc. No. 81, pp. 3-4.

[8]*Id.*

[9]*Id.* at p. 4.

[10]*Id.*

[11]Rec. Doc. No. 81, p. 6.

to use an "assist rope" that was attached to the platform to swing across to the M/V DOUG II.[12]

There is some dispute as to whether Richoux or Crochet was the first to swing onto the M/V DOUG II and whether there was a deckhand available to assist the men. Richoux states that he boarded first and that there was a deckhand available to assist them.[13] Crochet claims that he swung over first, and he does not recall seeing a deckhand on the deck.[14] When he landed on the M/V DOUG II, Crochet did not fall, slip, or land on any part of his body other than his feet.[15] Rather, Crochet contends that he "landed stiff and hard."[16]

Both before and after the rope transfer, Crochet failed to inform anyone on the platform or the M/V DOUG II of his medical problems and physical limitations.[17] Once Crochet and Richoux reached shore, Crochet told Richoux that he was "starting to get stiff," and by the time he got home, he was "hurting."[18] Plaintiff worked at the dock the week after the incident, but claims that his pain got progressively worse.[19]

At the time of his second accident on February 6, 2004, Crochet was working on a light duty basis due to the fact that he was still recovering from the September, 2003, accident.[20]

---

[12]*Id*. at p. 4.

[13]*Id*., Ex. 2, Dep. of Richoux, p. 45.

[14]Rec. Doc. No. 81, p. 6.

[15]*Id*.

[16]*Id*., Ex. 5, Dep. of Pl., p. 86.

[17]*Id*. at p. 9.

[18]*Id*., Ex. 5, Dep. of Pl., p. 67.

[19]*Id*.

[20]Rec. Doc. No. 81, p. 3.

According to plaintiff, he was 59 years old at the time of the second accident and he was working in pain due to injuries from the prior accident.[21]  In addition to those injuries, Crochet has a fused ankle and half of one foot amputated.[22]

In July, 2004, Crochet brought suit against his employer, Terrebonne Wireline Services, Inc., regarding the unrelated accident that occurred in September, 2003.[23]  On August, 24, 2005, Crochet amended his complaint to include a second cause of action based on the M/V DOUG II incident.  Stockstill was named as a defendant in this amended complaint.[24]  Crochet contends that the M/V DOUG II incident "exacerbated and aggravated" his previous injury, and that the M/V DOUG II was negligent because her crew failed to provide proper assistance and allowed plaintiff to make a rope transfer in sea conditions that were unsuitable and unsafe for such a transfer.[25]

On March 21, 2006, Stockstill filed this motion for summary judgment, alleging that Crochet has failed to identify any specific facts in dispute that might create a cause of action against Stockstill for "negligence or under the applicable general maritime law."[26]  Stockstill also claims that Crochet's initial allegations regarding violations of the M/V DOUG II's Certificate of Inspection are based on an erroneous interpretation of the limitations contained in the

---

[21]*Id.*

[22]*Id.*

[23]Rec. Doc. No. 1, pp. 1-2.

[24]Rec. Doc. No. 60.

[25]*Id.* at pp. 3-4.

[26]Rec. Doc. No. 81, p. 4.

Certificate, which Stockstill has rebutted nonetheless.[27]  In his opposition to Stockstill's motion for summary judgment, Crochet argues that there are genuine issues of material fact as to whether the conditions were such that it was negligent for the captain of the M/V DOUG II to allow a rope transfer to take place.[28]

*LAW AND ANALYSIS*

## I.  Standard of Law

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied

---

[27]*Id.* at pp. 8-10.

[28]Rec. Doc. No. 82, p. 7.

by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*  The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999) (internal quotation and citation omitted) (alternation in original).

## II.  Stockstill's Motion for Summary Judgment

In its motion for summary judgment, Stockstill argues that Crochet has not identified any specific facts in dispute that might create a cause of action against Stockstill.[29]  In his opposition to Stockstill's motion for summary judgment, Crochet presents facts regarding wave height, water depth, wind velocity, and wave frequency that he claims indicate rough conditions and create a genuine issue of material fact as to whether the captain of the M/V DOUG II was negligent in allowing a rope transfer to take place in the prevailing conditions.[30]  In addition, plaintiff also cites to the expert report of Captain John C. Manders to bolster his allegations.[31] Taking these facts as true for the purposes of this motion, and viewing the facts in the light most

[29]Rec. Doc. No. 81, p. 4.

[30]Rec. Doc. No. 82, p. 7.

[31]*See* Rec. Doc. No. 82, Ex. 3.

favorable to the non-moving party, the Court finds that a genuine issue of material fact exists as to the sea conditions on the day of the accident and the reasonableness of defendant's actions.[32]

Accordingly,

**IT IS ORDERED** that motion for summary judgment filed by defendant, Stockstill Boat Rentals, Inc.,[33] is **DENIED.**

New Orleans, Louisiana, August __14th__, 2006

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[32]*See* Rec. Doc. No. 82, Ex. 3.

[33]Rec. Doc. No. 81.